## MOSES & CLEMENS v. R. W. L. RASIN & CO.

*(Circuit Court, D. Maryland.   January 9, 1883.)*

BREACH OF CONTRACT TO DELIVER GOODS FOR WHICH PROMISSORY NOTES HAD
      BEEN GIVEN BY VENDEE AND INDORSED AWAY BY VENDOR—DISHONOR OF
      NOTES AFTER SUIT BROUGHT BY VENDEE—MEASURE OF DAMAGES.
      The defendants contracted to deliver goods to the plaintiff, and received the
   plaintiffs' notes for the purchase money, payable about one year after date.
   Before delivery of the goods the defendants failed in business, and plain-
   tiffs were unable to get the goods.   The defendants had meantime indorsed
   the notes and had them discounted.   The vendees entered suit to recover the
   full value of the goods as of the date of the demand and refusal to deliver.
   After the suit was entered, but before the trial, the notes matured, and the
   plaintiffs did not pay them.   *Held,* that notwithstanding the defendants had
   passed the notes away, as they were still liable on them as indorsers, the plain-
   tiffs, not having paid the notes, could not recover the full value of the goods,
   but only the difference between the market value at the time of the breach of
   the contract and the price contracted for ; and that, no such difference having
   been proved, the plaintiffs were entitled to only nominal damages.

At Law.

*O. Horwitz* and *Brown & Brune,* for plaintiff.

*T. M. Lanahan* and *I. N. Steele,* for defendants.

MORRIS, D. J.    Action for damages for breach of contract to de-
liver goods sold.    By contract in writing, dated July 30, 1881, be-
tween the defendants, R. W. L. Rasin & Co., of Baltimore, manu-
facturers of fertilizers, and the plaintiffs, Moses & Clemens, of Rich-
mond, dealers in fertilizers, the defendants sold to the plaintiffs
2,000 tons of acid phosphate, at $20 per ton, to be delivered free to the
usual place of shipping, on cars or boats, at Wilmington, North Caro-
lina, Port Royal, South Carolina, and Savannah, Georgia, in not less
than car-load lots.    With regard to delivery and payment the contract
was as follows :

   " The delivery to be so made at any time that may be convenient to us [Rasin
& Co.,] within, say eight months from this date, by issuing to you [Moses
& Clemens] an order for the said amount, on any stock of said guano which
we may have at said ports, or such other ports as may be agreed upon, so that
after you receive such order you may order the same forwarded to you at such
times as may suit your convenience; and at the same time that we may issue
to you an order as above named, you are to settle for said guano by issuing to
us, or to such person as we may designate, your notes for same, to your order,
indorsed by you in blank, made payable at the First National Bank of Rich-
mond, Virginia, and to mature in equal parts on November 1, November 15,
and December 1, 1882.    In May, 1882, or sooner, if possible, you must deliver
to us, or to our order, notes of the planters, or other purchasers, to whom you

have sold said guano, for the gross amount of all sales you may have made of said guano, to be held as collateral security for the payment of your notes herein mentioned; and all of said guano, also all proceeds thereof, you must at all times hold in trust for the payment of your notes herein named, and all of proceeds of said guano, and also of the collaterals herein referred to, must be first applied to the payment of your notes herein named as fast as such proceeds are collected, whether your notes herein named are then due or yet to become due. The collateral will be returned for collection. * * * If, for convenience of discounting,' we should request your notes, issued to mature at shorter times than above stated, you must so issue them; we to renew them from time to time until the final dates of maturity are reached, say first of November, fifteenth of November, and first of December, 1882."

Under this contract the defendants sent to the plaintiffs on October 17, 1881, an order on defendants' agent at Atlanta, Ga., for 500 tons of acid phosphate; and for the $10,000 purchase money for the said 500 tons the plaintiffs executed and delivered to defendants their three promissory notes, all dated October 1, 1881, each for the sum of $3,333.33, maturing November 1, November 15, and December 1, 1882. These notes were made by plaintiffs to their own order, and were indorsed by themselves. About December 23, 1881, the defendants failed in business, and demand being made by plaintiffs for delivery of the 500 tons of phosphate, the order for it was dishonored and they were unable to get it. Thereupon they instituted this suit to recover damages for the non-delivery of said phosphate, and they claim the full value of the goods at the date of the refusal to deliver. By agreement of the parties the issues of fact are to be determined by the court without a jury, all errors in pleading are waived, and either party is permitted to give in evidence any matter which could be offered if specially pleaded.

The facts are in great part admitted. It is conceded that the order given by defendants to plaintiffs for the 500 tons of phosphate was not equivalent to a delivery, and that there was a breach of the contract to deliver. It is admitted that after the bringing of this suit, but before the actual trial, the three promissory notes given by plaintiffs had been passed off by defendants, and that plaintiffs, under advice of counsel, have not paid them.

With regard to the indorsement of the notes by the defendants, the only evidence offered was the testimony of one of the defendants that he did indorse each of them with the firm name when he had them discounted, and the production of notices of protest. This evidence was received subject to exception, and is objected to by the plaintiffs as inadmissible without the production of the notes. As proof of the

written indorsement the evidence may be inadmissible, but I think the burden of proving that the notes were not indorsed rests upon the plaintiffs. The declaration alleges that the defendants received the notes, and, as matter of pleading, it is to be presumed that they remained in their hands until the contrary appears. They were only conditional payment, unless made absolute by some act of the defendants. The plea avers them to be overdue and unpaid. If the plaintiffs' case requires them to show that the notes were passed away by the defendants in such manner as to make them, notwithstanding their dishonor, absolute payment, it devolves upon the plaintiffs to aver those facts in their pleadings and prove them at the trial. If there had been in this case no agreement waiving formal pleading, I think, under the ruling in *Price* v. *Price*, 16 Mees. & W. 240, which has been followed in subsequent cases, the plea would be held good, and the plaintiffs' replication would be required to state the facts necessary to avoid it, and they would at the trial be required to prove them.

Assuming, then, what is undoubtedly the fact, that the notes were indorsed by the defendants when they procured them to be discounted, the contention of the defendants is that, by reason of the notes having been dishonored, they have acquired a right to retain possession of the goods although they have indorsed the notes away, and that, while they remain dishonored, the plaintiffs cannot recover the full value of the goods, but only the difference between the contract and the market price, if any difference is proved.

The plaintiffs, in support of their claim to recover the full value of the goods as of the time of demand and breach of the contract, invoke the rule by which, so long as the notes given by a vendee of goods are running or are outstanding in the hands of another party, so that they cannot be surrendered at the trial, the vendor cannot recover in an action for the price of the goods; and counsel argue that if the fact that the notes are outstanding will prevent the vendor from recovering from the vendee, he cannot in a like case defeat an action brought against him by the vendee for non-delivery of the goods. This, it seems to me, by no means necessarily follows. The plaintiff must always sustain every issue necessary to his recovery. It is conceded that plaintiffs have not paid for the goods. The taking of the notes was only conditional payment, and there can be no question that if they had remained in the hands of the defendants until they had matured and were dishonored, and the goods had also remained in their possession, they would have a right to retain the

goods until the payment of the price. Benj. Sales, § 767; 1 Chit. Cont. 596; *Miles* v. *Gorton*, 2 Cromp. & M. 511; *Dixon* v. *Yates*, 5 Barn. & Adol. 313.

The case would be different, of course, if the notes had been passed off by the vendor in such manner as that there could be no recourse to him for their payment. In that case, under all the decisions, he would have made what was conditional payment into absolute payment, and would be no further interested in the notes, and his lien and right of withholding delivery of the goods would be gone.

Does, then, the fact that the notes did not mature until after the bringing of this suit alter the plaintiffs' rights? The defendant, by proper plea *puis darrein continuance*, has pleaded the non-payment, and as the plaintiffs were the makers of the notes, and their dishonor is the plaintiffs' act, it would seem that if the non-payment would be good matter of defense at any time it should be allowed under a proper plea, though occurring after the bringing of the suit. The plaintiff urges that, as he had a perfect right of action when the suit was instituted, the fact that there has been delay in trying the cause should not result in defeating his right of action. It does not. The plea does not go to the right of action; its only effect is to limit the extent of the recovery. The plaintiff must at least recover nominal damages. The measure of damages for not delivering goods under such contract is the difference between the contract and the market price, (or nominal damages, if no difference is proved,) unless the price of the goods has been paid, when the measure of damages is the entire market price.

The principal and most serious question is whether the defendants, having discounted the notes and received the proceeds, even though they did indorse the notes and are liable on them as indorsers, can exercise the vendor's right of withholding the goods for non-payment of the price. No case in which the precise question has arisen just as it has in the present case has been cited, but several cases have been quoted by defendants' counsel in which the action was instituted after the dishonor of the notes, and cases arising under the right of stoppage *in transitu* upon insolvency of the buyer, where it was held that the fact that the notes given for the price of the goods were outstanding, not in the hands of the vendor, did not make the payment absolute, and did not preclude the vendor from reducing the damages, in an action against him for non-delivery, by showing that the notes for the price had not been paid.

Thus, in *Miles* v. *Gorton*, 2 Cromp. & M. 504, a portion of the goods sold had not been delivered, and a bill of exchange for the price of the whole parcel of goods had been drawn by the vendors, accepted by the vendee, and negotiated by the vendor. BAYLEY, B., said:

"When the bill of exchange is dishonored there is no longer payment or anything which can be considered as equivalent to payment, and it seems to me that the assignee of the bankrupt cannot, after what has taken place, insist on delivery without actual payment. It is said the bill is still outstanding. That is true; and it may, perhaps, operate to prevent the seller from having a complete right to the goods, so as to be able to give a valid title by reselling them to a third party; but the only question in the present case is whether he had not a right to hold them until the price is paid."

In the same case, VAUGHAN, B., said:

"The moment the bill was dishonored the parties were remitted to their original situation, and the goods in question never having been out of the possession or control of the original vendor, he was entitled to his right of lien for the price."

In *Valpy* v. *Oakley*, 16 Adol. & E. 941, the assignees in bankruptcy of Oakley sued Valpy for non-delivery of pig-iron under a contract, and claimed as damages the full value of the undelivered iron. There had been two bills of exchange drawn on the bankrupts, and accepted by them, one of which the vendor indorsed away, and the indorsee had proved it against the bankrupt's estate. The other was held by the vendor, who also proved it, but after the commencement of the action he withdrew it and had the proof expunged.

It was argued by the assignee in bankruptcy, who stood in the place of the vendee, that to resist the claim of the vendee the defendants should be able to place him in precisely the same situation he occupied when the contract was made, which could not be done, as one of the bills had been discounted, and was outstanding. In giving judgment for only nominal damages, Lord CAMPBELL, C. J., said:

"At the time of the bankruptcy the bills given for the iron were outstanding. While current they were payment; when dishonored they were waste paper. It is as if no bill had been given. It is allowed that if the contract had been to pay by bills, and the vendees had given no bills, they could not have recovered the full value of the iron not delivered, but only the difference between the market price at the time of the breach of the contract to deliver and the price contracted for. It would be as if the payment had been to be made in ready money, and no money had been paid. The parties are here in the same situation as if no bills had been given. * * * The case rests upon the principle of stoppage *in transitu;* a right which may be exercised where bills have been given for the goods and are dishonored."

*Griffiths* v. *Perry*, 1 El. & El. 680, was an action by an assignee of the vendee of the goods for the full value, upon failure to deliver. A bill of exchange for the whole had been accepted, and the vendor had it discounted. The vendee was entitled to immediate delivery of all the goods, but could get only part of them. CROMPTON, J., said:

"A vendor's lien on specific goods sold, is gone when a bill is given for the price, but revives if that bill is dishonored before he has parted with possession of the goods; or, rather, he then acquires not a lien, strictly speaking, but a right of withholding delivery analogous to the right of an unpaid vendor to stop *in transitu.* * * * Here the dishonor of the bill and the insolvency of the plaintiff did not happen until after there had been a breach of the contract by the defendant, and therefore not until after the plaintiff had acquired a cause of action. *Valpy* v. *Oakley* is decisive to show that though matters occurring *ex post facto* cannot do away with a vested cause of action, they may be taken into consideration as reducing the damages recoverable."

See, also, Benj. Sales, § 825, sec. 235; 1 Smith, Lead. Cas. 1212; *Newhall* v. *Varges*, 13 Me. 93; *White* v. *Welsh*, 2 Wright, 396; *Arnold* v. *Delano*, 4 Cush. 53; Smith, Merc. Law, 661.

In the present case the application of the principles established by the cases above cited may result in hardships to these plaintiffs who are not shown to be insolvent, and who, doubtless, in giving notes having over a year to run, relied upon the proceeds of the goods to meet them. But the case is one between parties who have both made default in their obligations, and any rule which deals with their reciprocal rights must of necessity be somewhat arbitrary. From the cases cited, and others which could be adduced, it is clear that the right of a vendor in possession to retain for the unpaid price is an equity which is highly favored. It is said that such a vendor has more than a mere lien on the goods; that he has a special property analogous to that of a pawnee.

The hardship on the plaintiff is not, perhaps, so great as might at first appear. The defendants are insolvent, and their estate is in the hands of an assignee. The holder of the notes has a right to prove them against that trust estate because of the defendant's indorsement. But the plaintiffs, if they had judgment for the full value of the goods, should not be allowed to prove it and receive a dividend, for then the trust estate would be paying two dividends in respect of the same debt. *Oriental Bank* v. *European Bank*, L. R. 7 Ch. App. 102.

By maintaining the rule requiring the plaintiffs to pay their notes before they are allowed to recover the full value of the goods for

which they were given, it seems to me the interests of commerce, confidence in commercial paper, and prevention of multiplicity of suits will be best subserved.

The plaintiffs, then, being only entitled to recover the difference between the market value of the goods at the time of the breach and the contract price, it remains to consider the evidence on this point. The contract was made thirtieth of July, 1881, and the breach occurred December 23, 1881. One of the plaintiffs testified that as the season advanced there was a rise in price of two dollars to three dollars per ton, and that he thinks in December he would have had to pay three dollars advance for the same goods. One of the defendants testified that there was no material change in price between June and December, and that after December the goods could have been bought at less than the contract price. The only disinterested witness is a manufacturer of fertilizers in Baltimore city, who testifies that although there was an advance in September and October, that the price weakened in November and December, and may have dropped again in Baltimore to the old price, though he thinks in the south the rise may have continued until January; but that after January there was a fall in price, as there was a decline in the price of the crude materials. He remarks upon some differences of price between fresh and damp fertilizer, and that which is old and dry; but that difference does not seem to be material in this case, as under the contract the fertilizer was deliverable in the cotton states, where this difference is not important. On a review of the whole testimony on this question of the market price, I do not find that it has so satisfied me of any advance in price that I could feel safe in finding it to be a fact.

Verdict for nominal damages, each party to pay their own costs.

See *Lawrence* v. *Morrisania*, 12 FED. REP. 850.